UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 15-40075 |
| Plaintiff, | DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS |
| vs. | |
| BENJAMIN LYLE IVERSON, | |
| Defendant. | |

_____

Defendant Benjamin Lyle Iverson submits this memorandum of law in support of Defendant's Motion to Suppress pursuant to the Fourth and Fifth Amendments to the United States Constitution and D.S.D. L.R. 7.2 of the United States District Court for the District of South Dakota

**FACTUAL BACKGROUND**

On April 11, 2015, Iverson was walking on Marion Road in Sioux Falls, South Dakota. He walked from the intersection of 18th Street and Marion to the intersection of 37th Street and Marion, where he was approached by law enforcement officers. Special Agents Troy Boone and Jessica Page stopped him, told him they had been following him, falsely informed him they were investigating a burglary, asked to see his cell phone, and took his ID card. Iverson denied being involved in a burglary and declined to hand over his phone.

At this point, Special Agent Boone told Iverson the real reason they had stopped him: they were following him as part of an undercover sex solicitation sting, and they believed he had attempted to arrange sex with a 15-year-old. Special Agent Boone handcuffed Iverson and informed him he was being detained. He also searched Iverson and seized a cell phone from his

pocket. Iverson again declined to consent to a search of his phone.

While Iverson was handcuffed on the side of the road, Special Agent Boone demanded that he be honest and argued with him about what he had been doing and whether he intended to pay for sex with an underage girl. In the course of this questioning, Iverson admitted to sending emails to arrange an encounter with a 15-year-old girl.

Eventually, Special Agent Boone formally arrested Iverson for solicitation of a minor and read him *Miranda* warnings. Iverson was transported to the law enforcement center, where the interrogation continued.

## DISCUSSION

Iverson's pre-*Miranda* statements and the contents of his phone were obtained in violation of his constitutional rights and should be suppressed.

### A. Pre-*Miranda* Statements

The Fifth Amendment protects against self-incrimination. U.S. Const. amend. V. Under *Miranda v. Arizona*, 384 U.S. 436 (U.S. 1966), "an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning." *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990). *Miranda* warnings must "be issued *prior to questioning* whenever a suspect is (1) interrogated (2) while in custody." *United States v. Cowan*, 674 F.3d 947, 957 (8th Cir. 2012) (internal quotation omitted) (emphasis in original).

"A suspect is in custody if a reasonable person in his position would not have felt free to terminate the interrogation and leave." *Cowan*, 674 F.3d at 957. The Eight Circuit has identified six non-exclusive factors for determining whether a suspect is in custody:

> (1) whether police told the suspect "that the questioning was voluntary," the suspect could leave or ask the officers to do so, "or that the suspect was not considered under arrest"; (2) whether the suspect's movement was restrained during the questioning; (3) "whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions"; (4) whether police used "strong arm tactics or deceptive stratagems" during questioning; (5) "whether the atmosphere of the questioning was police dominated"; and (6) whether the suspect was arrested at the end of the questioning.

*Id.* at 957 (quoting *Griffin*, 922 F.2d at 1349). "[T]he critical inquiry is not whether the interview took place in a coercive or police dominated environment, but rather whether the defendant's freedom to depart was restricted in any way." *Id.* (internal quotation omitted).

Iverson was in custody from the moment he was stopped on the sidewalk by Special Agents Boone and Page. The agents stopped him, told him they had been following him for almost twenty blocks, and took his ID card. They lied about the reason they approached him and said they were investigating a burglary. They repeatedly ignored his statement that they could not look at his phone and continued asking him for it. At this point, no reasonable person would have felt free to leave. There were multiple law enforcement officers present, the officers were lying and accusing Iverson of participating in a violent crime, and the officers had taken his ID card. Iverson was in custody for the purposes of *Miranda* from the moment the involuntary encounter began. The custodial nature of the situation was only heightened when Special Agent Boone handcuffed Iverson and told him he was being detained. No reasonable person would have felt

free to leave at any point during this encounter.

All of Iverson's statements between the moment he was first approached and the moment he was advised of his *Miranda* rights were the product of unwarned custodial interrogation and should be suppressed.

> B.     **Search of Cell Phone**

Special Agent Boone seized Iverson's cell phone after handcuffing him on the side of the road. Officials later conducted a search of the contents of the phone. Iverson repeatedly and explicitly denied consent for this warrantless search.

It is axiomatic that warrantless searches "are per se unreasonable under the Fourth Amendment . . . subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The United States Supreme Court has made clear that a warrantless search of the contents of a cell phone is unconstitutional: "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Riley v. California*, __ U.S. __, 134 S. Ct. 2473, 2495 (2014).

Officers did not get a warrant for Iverson's phone. *Riley* foreclosed reliance on the search incident to arrest warrant exception. Iverson clearly did not consent to the search. Finally, nothing in the record suggests that exigent circumstances necessitated the warrantless search. Accordingly, the search of Iverson's phone violated the Fourth Amendment, and the results should be suppressed.

## CONCLUSION

Iverson's statements were obtained in violation of his Fifth Amendment rights, and the warrantless search of his cell phone violated his Fourth Amendment rights. The evidence obtained as a result of these constitutional violations must be suppressed. *Wong Sun v. United States*, 371 U.S. 471 (1963).

Dated this 16th day of July 2015.

Respectfully submitted,

NEIL FULTON
Federal Public Defender
By: /s/ Jason J. Tupman

Jason J. Tupman, Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
200 W. 10th Street, Suite 200
Sioux Falls SD 57104
Telephone: 605-330-4489   Fax: 605-330-4499
filinguser_SDND@fd.org